GEORGE A. GLENDON, Respondent, Appellant, *v.* THE CITY OF NEW YORK, Appellant, Respondent.

First Department, April 9, 1937.

*Louis Boehm* of counsel [*Gabriel Rubino* and *S. C. Stember* with him on the brief; *Boehm & Zeiger*, attorneys], for the plaintiff.

*Oren C. Herwitz* of counsel [*Paxton Blair* with him on the brief; *Paul Windels, Corporation Counsel*], for the defendant.

GLENNON, J. This action was commenced by plaintiff against the city of New York to recover the sum of $7,812.45 which is alleged to be the balance due on account of services rendered by him as official stenographer to Governor Roosevelt on the hearing of charges filed against a former mayor. In the complaint it is alleged that the fair and reasonable value of plaintiff's services was $16,776.45, of which only $8,964 was paid by the city, leaving a balance due and owing of $7,812.45.

In its answer the city denied that the amount claimed represents the fair and reasonable value of the services rendered by the plaintiff. Further, it set up affirmative defenses of accord and satisfaction, and payment.

The action came on for trial before the court without a jury. After appropriate motions were made at the conclusion of the trial the court reserved its decision. Subsequently, the court rendered the following opinion: " The action was tried before the court without a jury. It was instituted to recover $7,812.45 for services rendered as official stenographer in an investigation and hearing before the Governor seeking the removal of an important city official. Included in the said balance for services thus rendered was the sum of $3,210.28, designated as extraordinary services and expenses. This sum the court disallows, finding naught in the evidence to sustain it. On the law and on the facts, as regards the balance of $4,602.17, the court finds in favor of the plaintiff. Judgment accordingly for plaintiff for the last mentioned sum plus interest."

Both parties have appealed. The plaintiff insists that he is entitled to the full amount for which he sued. The defendant takes the position that the judgment should be reversed and the complaint dismissed.

It should be noted at the outset that the so-called extraordinary expenses were included in the principal amount of the bill which was approved by the Governor, and further. that the Governor over his signature stated: " I hereby approve the above bill and order its payment, upon the audit and warrant of the Comptroller."

It is argued by the plaintiff that the Governor's audit, approval,

requisition and order of payment by the city of the sum of $16,776.45 created, under the statute involved, a fixed and liquidated obligation of the city. The statute to which reference is made is section 34, subdivision 7, of the Public Officers Law which reads in part as follows:

" 7. If the proceeding be for the removal of a county or city officer, the reasonable expenses incurred in the conduct thereof shall be a county or city charge, as the case may be. The board of supervisors of the county, or the board of estimate and apportionment or other board or body of the city vested with the power to make appropriations, on the requisition of the Governor, from time to time, shall forthwith appropriate such sum as shall be needed to pay such expenses; and after such appropriation shall have been duly made, the fiscal officer of the county or city, as the case may be, shall pay such expenses, upon vouchers approved by the Governor, after audit, in the same manner and by the same authority as other county or city charges are audited and paid."

If we were to adopt the argument advanced by the plaintiff that the Governor's " audit " was final, then there would be no question as to his right to succeed in having the amount sued for paid in full. The difficulty is that a fair construction of the section, as quoted, indicates quite conclusively that the audit referred to is the one to be made by the fiscal officer of the city, in this case the comptroller. If the Legislature had intended to have the Governor audit the expenses, it could have said so in plain and unmistakable language, and would not have concluded the sentence by the words: " in the same manner and by the same authority as other county or city charges are audited and paid."

A different situation might obtain if the Legislature had not inserted the comma after the word " Governor," before making reference to the audit. In *Tyrrell* v. *Mayor* (159 N. Y. 239, at p. 242) Judge VANN said: " The punctuation of this statute is of material aid in learning the intention of the Legislature." And again (at p. 243): " The punctuation, however, is subordinate to the text and is never allowed to control its plain meaning, but when the meaning is not plain, resort may be had to those marks, which for centuries have been in common use to divide writings into sentences, and sentences into paragraphs and clauses, in order to make the author's meaning clear."

A somewhat similar situation was presented to the Court of Appeals in *People ex rel. Rand* v. *Craig* (231 N. Y. 216). While the case is *not* exactly in point, since the construction of a different statute was involved, it is illuminating. There, the Attorney-General, pursuant to the provisions of the Executive Law, appointed

a special deputy to conduct prosecutions in one of the counties of the State. Thereafter, his compensation was approved by the Attorney-General in the sum of $15,000, and a voucher was presented to the comptroller of the city of New York for payment. The comptroller took the position that the claim was subject to audit in the same manner as other claims against the city or its component counties are audited and paid. The special deputy insisted that, by force of the approval of the Attorney-General, payment of the claim was mandatory. Judge CARDOZO, writing for a unanimous court, in concluding his opinion said: " We hold, then, that the relator's compensation, since it has not been brought within an appropriation by the Legislature of the State, is still subject to audit and allowance by the fiscal officers of the county. We do not mean to underrate the obscurity of the statutory provisions invoked in his behalf. They yield themselves not unreadily to conflicting interpretations. We have felt it our duty, however, when obscurity has engendered doubt, to fall back upon the fundamental principle that only clear warrant of law will justify the assumption of a power to control the public purse (*Stetler* v. *McFarlane*, 230 N. Y. 400, 408). That warrant is not here."

If we are to apply the same reasoning employed there to the section of the Public Officers Law here under consideration, we must reach the conclusion that the duty rested on the comptroller to make an audit before plaintiff was entitled to payment.

The authority of the comptroller to audit after the presentation of a claim against the city is set forth in section 149 of the Greater New York Charter. This section reads in part as follows: " No claim against the city or against any of the counties contained within its territorial limits, or payable in the first instance from moneys in the city treasury for services rendered or work done or materials or supplies furnished, * * * shall be paid unless an auditor of accounts shall certify that the charges therefor are just and reasonable."

The meaning of the word " audit," when applied to claims against cities or counties, is well understood. In *People ex rel. Myers* v. *Barnes* (114 N. Y. 317) Judge POTTER said: " To audit is to hear, to examine an account, and in its broader sense it includes its adjustment or allowance, disallowance or rejection." Again, in *People ex rel. Hamilton* v. *Supervisors* (35 App. Div. 239) we find this statement: " The verb ' audit,' as here used, means simply to examine, to adjust, and it clearly implies the exercise of judicial discretion." (See, also, *People ex rel. Brown* v. *Board of Apportionment & Audit*, 52 N. Y. 224; *People ex rel. Benedict* v. *Supervisors*, 24 Hun, 413.)

In the event that the plaintiff was dissatisfied with the result reached by the comptroller after audit, he could have rejected it and pursued his legal remedy. (Greater New York Charter, § 149.) If nothing more had happened between the parties a different situation might have obtained. However, something did happen.

The plaintiff gave an unrestricted power of attorney to one David F. Pisik to represent him in all proceedings and negotiations in connection with the collection of his claim against the State or city for the services rendered in connection with the hearing before the Governor. The power of attorney recited that Pisik was clothed " with full power to prosecute to a termination and adjustment of the said claim or claims hereby giving and granting to the said attorney full power and/or authority to receive and receipt for any draft or warrant or other evidence of indebtedness that may be issued in liquidation of said claim or claims, or any part thereof, and to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully as I might or could do if personally present."

In due course, the power of attorney was filed with the comptroller. Pisik then entered into negotiations. The comptroller on his part resisted payment on the theory that the bill was excessive. Finally, according to the comptroller's representative, the claim was adjusted for the sum of $8,964. The credible evidence adduced undoubtedly substantiates the claim of the city. A settlement was made, the sum of $8,964 was agreed upon, and a check in that amount was delivered to plaintiff's representative and was accepted and deposited by him. Thus we have, as the city contends, an accord and satisfaction within the meaning of the authorities.

It is idle for the plaintiff to argue that the check was accepted under protest and only in partial payment of his claim. While Pisik wrote a letter to that effect to the comptroller after the check was deposited by him and paid by the city, still it is apparent that the comptroller did not acquiesce in his statement as was evidenced by the comptroller's letter in answer thereto, wherein he stated: " The amount so audited was known to you before the warrant was prepared and no protest was made by you as stated. Under the circumstances there is no further action to be taken by this office." The rule which must be applied in the present case was well stated by Mr. Justice UNTERMYER in *Broderick* v. *Keasbey & Mattison Co.* (239 App. Div. 207): " Having accepted the check on the express condition that it was in satisfaction of a *bona fide* controversy then existing between the parties, the plaintiff

could not use the check and reject the condition. (*Nassoiy* v. *Tomlinson*, 148 N. Y. 326; *Fuller* v. *Kemp*, 138 id. 231; *Hills* v. *Sommer*, 53 Hun, 392.)"

We conclude, therefore, that the judgment of the court at Trial Term should be reversed, with costs, and judgment granted in favor of the defendant dismissing the complaint on the merits, with costs.

MARTIN, P. J., and TOWNLEY, J., concur; O'MALLEY, J., dissents and votes for reversal in so far as the judgment failed to award plaintiff the principal sum sued for; McAVOY, J., taking no part.

O'MALLEY, J. (dissenting). I dissent upon the ground that the Governor is vested with the power of primary and final audit with respect to necessity and reasonableness, there being reserved to the fiscal officer merely a limited power of audit.

The judgment, therefore, should be reversed, in so far as it fails to award plaintiff the principal sum sued for and otherwise affirmed.

McAVOY, J., taking no part.

Judgment reversed, with costs, and judgment directed in favor of the defendant dismissing the complaint on the merits, with costs.