GEORGE A. GLENDON, Appellant, *v.* CITY OF NEW YORK, Respondent.

Argued December 6, 1937; decided January 11, 1938.

*Albert Massey* for appellant. The action of the Governor in determining and fixing the reasonable value of the plaintiff's services and disbursements, coupled

with his requisition to the Board of Estimate and Apportionment, and his approval of the plaintiff's voucher, fixed and liquidated the obligation of the city to the plaintiff and made payment thereof by the city mandatory. (*People* v. *Green*, 5 Daly, 194; *Traverse City* v. *Blair Township*, 190 Mich. 313; *People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125; *People ex rel. Hirschberg* v. *Board of Supervisors*, 251 N. Y. 156; *People ex rel. Nash* v. *Board of Supervisors*, 164 App. Div. 89; *People ex rel. Ostrander* v. *Chapin*, 105 N. Y. 309; *New York* v. *Sands*, 105 N. Y. 210; *Hyland* v. *Baxter*, 98 N. Y. 610; *People ex rel. King* v. *Gallagher*, 93 N. Y. 438; *Langdon* v. *New York*, 93 N. Y. 129; *Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377; *Lord & Burnham Co.* v. *City of New York*, 251 N. Y. 198; *Matter of Levy*, 192 App. Div. 550; *Henn* v. *City of Mt. Vernon*, 198 App. Div. 152; *Bullock* v. *Cooley*, 225 N. Y. 566; *New York* v. *N. Y. C. Ry. Co.*, 193 N. Y. 543.)

*Paul Windels, Corporation Counsel* (*Paxton Blair* and *Oren Clive Herwitz* of counsel), for respondent. Plaintiff's claim under subdivision 7 of section 34 of the Public Officers Law (Cons. Laws, ch. 47) is unliquidated and subject to audit by the Comptroller of the city of New York. (*People ex rel. Rand* v. *Craig*, 231 N. Y. 216; *Easton* v. *Pickersgill*, 55 N. Y. 310; *Matter of City of New York*, 217 N. Y. 1; *People ex rel. Hirschberg* v. *Board of Supervisors*, 251 N. Y. 156; *People ex rel. Gagan* v. *Purdy*, 173 App. Div. 350; *People ex rel. Benner* v. *Queens County*, 39 Hun, 442.)

CRANE, Ch. J. Charges having been filed against Mayor Walker of the city of New York, a hearing was ordered before the Governor who, on the 10th day of August, 1932, made the following order:

" George A. Glendon be and the same hereby is appointed to take down stenographically and produce mimeographed typewritten copies of all hearings had

before me in the above entitled matter, commencing on the 11th day of August, 1932, and continuing thereafter until such hearings are closed, that he furnish my office and those whom I authorize to receive such copies, as many copies of such proceeding as they need, that such copies be furnished complete within one-half hour after the ending of each and every day's proceedings, and to be paid as provided by law.

" FRANKLIN D. ROOSEVELT,
" *Governor of the State of New York.*"

In order to do the work as required, Glendon employed other stenographers, and worked them in relays; also a staff of typists and mimeograph workers. At the end of the hearing he presented his bill for $32,363.10, which, after investigation, the Governor, on the 27th day of October, 1932, audited and allowed in the sum of $16,776.45. The Governor certified: " I hereby approve the above bill and order its payment, upon the audit and warrant of the Comptroller."

On December 22, 1932, the Governor made the following requisition upon the Board of Estimate and Apportionment of the city of New York:

" Pursuant to the provisions of Subdivision 7 of Section 34 of the Public Officers Law, as added thereto by Chapter 15 of the Laws of 1928, I hereby make requisition upon you for the following sums of money, which you are to appropriate to meet the reasonable expenses of conducting before me the hearing of the said charges against Hon. James J. Walker, Mayor of the City of New York. That is to say: * * *

" Compensation allowed and approved by me to George A. Glendon, Jr., Esq., as Official Stenographer at the hearing of the said charges for 120 copies of the verbatim report taken at the said hearing............$16,776.45
" Dated ALBANY, NEW YORK,
" *December 22, 1932.*
" FRANKLIN D. ROOSEVELT."

The Comptroller of the city of New York refused to recognize the order and the requisition other than to allow the bill in the amount which he thought reasonable, to wit, the sum of $8,964. The Comptroller considered it to be his duty to reaudit this claim, inquire into the nature and value of the services, and fix the extent of the compensation. This action has been brought to recover $7,812.45, the balance of the sum fixed by the Governor, and the question is whether subdivision 7 of section 34 of the Public Officers Law (Cons. Laws, ch. 47) intended to have two officials make inconsistent audits of claims for services, or clothe two officials with the power to fix the reasonable value thereof; in other words, whether the Comptroller of the city of New York was intended to override the Governor in this particular. The dispute has arisen through a misunderstanding of this provision of the law; and, while we can see two sides to the question, yet we think reason, the wording and the purpose in view lead to the interpretation — that the Governor has the final word.

Let us turn to the law (§ 34), which reads as follows:

" 1. In any proceeding for the removal by the governor of a public officer, he may conduct an investigation into the charges, and may take the evidence as to the truth of the charges at a hearing for such purpose, * * *."

" 3. * * * Both in the investigation of the charges and at the hearing into the truth of the charges, the governor * * * may require witnesses to attend before him, and may also require the production of any books, papers, or other documents, deemed by him to be material, and shall issue subpœnas for such witnesses for appearance at the hearing as may be requested by the officer proceeded against."

" 5. * * * the governor, * * * is authorized to employ counsel * * * and to employ such personnel as may be necessary to assist him in the performance of his duties under this section,

" 6. If the proceeding be for removal of a state officer, the reasonable expenses incurred in the conduct thereof, including the compensation of authorized counsel and of necessary assistants, in the taking and printing of the testimony, shall be paid by the state, on the certificate of the governor, out of moneys appropriated or available therefor.

" 7. If the proceeding be for the removal of a county or city officer, the reasonable expenses incurred in the conduct thereof shall be a county or city charge, as the case may be. The board of supervisors of the county, or the board of estimate and apportionment or other board or body of the city vested with the power to make appropriations, on the requisition of the governor, from time to time, shall forthwith appropriate such sum as shall be needed to pay such expenses; and after such appropriation shall have been duly made, the fiscal officer of the county or city, as the case may be, shall pay such expenses, upon vouchers approved by the governor, after audit, in the same manner and by the same authority as other county or city charges are audited and paid. If there be no funds available for such purpose, the board of supervisors of the county, or the comptroller or other chief fiscal officer of the city, is hereby authorized and directed to sell certificates of indebtedness or revenue bonds of such county or city in anticipation of the receipt of taxes, and out of the proceeds thereof to make the payments required to be made by this section. The amount necessary to pay the principal and interest of such certificates or bonds shall be included in the estimate of moneys necessary to be raised by taxation to carry on the business of such county or city and shall be made a part of the tax levy for the year next following the year in which such appropriations are made.

" 8. A person designated by the governor to conduct an investigation or hearing, or both, under this section, who is not regularly employed by the state or by a county or city, shall be paid a reasonable compensation for his

services, to be fixed by the governor, and paid in the same manner as other expenses for the removal of a state officer, or a county or city officer, as the case may be, as provided in this section."

The compensation to be paid this stenographer, Glendon, is regulated by this paragraph 8: " shall be paid a reasonable compensation for his services, to be fixed by the governor." If it is to be fixed by the Governor it is not to be undone by any other official. We cannot have two independent fixings.

Again, attention must be called to paragraph 6, which applies to the proceedings against State officials. Here the reasonable expenses are to be paid by the State on the certificate of the Governor, again indicating that, in these removal proceedings, it is the Governor who determines what help is necessary and what pay is reasonable.

The same thing applies to paragraph 7, applicable to city officers, except that the wording has caused some confusion. The reasonable expenses incurred by the Governor shall be a city charge. The Board of Estimate " on the requisition of the governor, from time to time, shall forthwith appropriate such sum as shall be needed to pay such expenses." The Governor shall make requisition from time to time for the money needed, and the Board of Estimate must appropriate the sum, even if it be necessary to sell bonds for the purpose. We note above that the Governor in this case made such a requisition upon the Board of Estimate. Then subdivision 7 also provides how the money thus appropriated under the mandate of the Governor shall be paid out: " * * * the fiscal officer of the county or city * * * shall pay such expenses, upon vouchers approved by the governor, after audit, in the same manner and by the same authority as other county or city charges are audited and paid." The Governor, as above stated, in this instance approved the vouchers for the payment of the plaintiff, but the Comptroller has

interpreted the words "after audit," to mean that he is to go over the work of the Governor, re-examine the claim for expenses, and himself determine its reasonableness and whether the requisition of the Governor was proper. We do not think that this is the meaning of the provision.

We must read this whole law as giving the Governor the power and the authority to appoint his staff for the purpose stated and to determine the reasonable pay for their services. He cannot be crippled in the investigation by his requisitions from time to time being turned down or interfered with by the city authorities. The Legislature must have intended that the authority it had given to the Governor in using the words "requisition," "approve," "fix," as applicable to expenses, was full and complete. These words so indicate. "Fixing a compensation," "approving expenses," "requisitioning" for money which shall be forthwith appropriated can mean nothing less. The words directing the Comptroller to pay such expenses after audit in the same manner and by the same authority as other city charges refer to the method of payment after checking up to see that the papers are regular, the Governor's signature genuine, and that other provisions of this law have been complied with. The Comptroller will audit in the same manner as other city claims are audited except he may not reduce the amount of the claim as fixed by the Governor. This is our interpretation of the statute.

Mandatory provisions regarding payments of salaries or claims are not unusual or unknown in legislative enactments. (*Matter of McAneny* v. *Bd. of Estimate & Apportionment*, 232 N. Y. 377.)

It follows, therefore, that the judgments should be reversed and a new trial granted, with costs to abide the event.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.