In the Matter of the City of White Plains, Respondent, v City of New York et al., Appellants.

Second Department, July 31, 1978

## APPEARANCES OF COUNSEL

*Allen G. Schwartz, Corporation Counsel (Anthony Z. Scher,*

*Stephen P. Kramer* and *L. Kevin Sheridan* of counsel), for appellants.

*Paul B. Bergins, Corporation Counsel (Paul S. Richmond* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J.

In a proceeding pursuant to CPLR article 78 converted by Special Term into an action for money "had and received", the primary question on appeal is whether the City of New York (New York) was required to audit the claim of the City of White Plains (White Plains) for reimbursement of excess water charges, thereby tolling the six-year Statute of Limitations until the audit was performed.

### THE FACTS

Since 1922, White Plains has purchased water from New York. Rates are fixed by agreement, or, if there is no agreement, by the New York State Department of Environmental Conservation (D.E.C.), successor to the New York State Water Resources Commission, upon application of either party.

From 1938 to the early part of 1967, White Plains paid for its water at an agreed rate of $105.28 per million gallons. However, by letter dated January 27, 1967, New York's Commissioner of the Bureau of Water Supply, Gas and Electricity unilaterally increased the rate to $120 per million gallons, effective February 1, 1967. From February 1, 1967 through December 31, 1971 White Plains paid for the water taken from the New York system at the increased rate, but did so under protest. It should also be noted that on March 6, 1967, the Common Council of White Plains passed a resolution protesting the rate increase and pointing out that it was contrary to provisions of New York's Administrative Code which prescribed the manner of setting the rates. A certified copy of the resolution was sent to the Mayor of the City of New York and its Commissioner of Water Supply, Gas and Electricity.

In March, 1971 New York made application to the D.E.C. Commissioner to fix the fair and reasonable rate retroactive to February 1, 1967, for water supplied by it to White Plains. By order dated January 31, 1973, the commissioner fixed the rate at $103.72 per million gallons. The rate was not retroactive.

(New York appealed from the order, but in May, 1975 the appeal was dismissed by the Appellate Division, Third Department.)

On or about May 29, 1973 White Plains filed a verified claim with New York in the amount of $201,104.46. This sum allegedly represented the total of overcharges for water paid by White Plains between February 1, 1967 and December 31, 1971. On or about June 26, 1973, New York's Office of the Comptroller requested White Plains to provide a detailed itemized statement of its claim. White Plains complied with the request the very next day.

Evidently there was no further contact between the parties until October 22, 1975, when an auditor from New York's Office of the Comptroller inspected the books and records of White Plains relating to its claim. He also made copies of extracts from these books and records which were considered pertinent. New York rejected the claim in September, 1976 and White Plains brought the within proceeding on October 27, 1976. Both sides agree that the amount of the overcharge is $181,834.01 for the period February 1, 1967 to December 31, 1971.

New York asserts that since this proceeding, which was converted by Special Term into an action for money had and received, was not brought until October 27, 1976, part or all of the claim for overcharges paid by White Plains from February 1, 1967 to December 31, 1971 is barred by the six-year Statute of Limitations applicable to an action for money had and received (see CPLR 213; *Jandorf v Freedman & Slater,* 83 NYS2d 331; *Wilson v Phelps,* 165 Misc 455). White Plains contends that its cause of action for overpayment accrued in September, 1976 when the audit of the comptroller was completed and the claim was rejected. Hence, since the petition was served on October 27, 1976 the action was timely. Special Term agreed with the position taken by White Plains.

THE LAW

Under chapter 5 of the New York City Charter, entitled "Comptroller", section 93, which was in effect during the period of this dispute, states in part:

"§ 93. Powers and duties. * * *

"c. The comptroller shall (1) audit financial transactions of the city, including vouchers, warrants, and payrolls; (2) audit

all official accounts and the accrual and collection annually of all revenues and receipts; and (3) audit the expenditure of city funds by any public or private agency that receives such funds from the city. * * *

"e. The comptroller shall have power and it shall be his duty to audit all vouchers before payment for availability of funds and prepare warrants. No warrant shall be prepared by the comptroller unless sufficient appropriations are available to cover the payments involved. No agency shall expend or commit any funds otherwise than for the program and purposes for which the funds have been appropriated and the comptroller shall conduct audits and take such other action as is required to assure compliance with this provision. * * *

"g. The comptroller shall have the power to settle and adjust all claims in favor of or against the city in such manner as shall be prescribed by law and for that purpose may administer oaths, except that, with regard to excise and non-property taxes, such power shall be vested in the finance administrator. The comptroller shall not revise the terms of a contract or agreement with the city after its execution. The city may include in construction contracts or agreements for capital projects provisions that authorize the comptroller to submit disputes arising under any such contract or agreement to impartial arbitration."

Pertinent provisions of the New York City Administrative Code read as follows:

"§ 93-1.0 Bureaus in office of comptroller. * * *

"2. A bureau of audit, the chief officer of which shall be called chief auditor of accounts. Such bureau shall audit, revise and settle all accounts in which the city is concerned as debtor or creditor except accounts in relation to excise or non-property taxes. Such bureau shall keep an account of each such claim for and against the city, and of the sums allowed upon each, and certify the same to the comptroller, with the reasons for the allowance.

"3. A bureau of law and adjustment, the head of which shall be known as chief of the bureau of law and adjustment. Such bureau shall investigate and report to the comptroller for adjustment all awards made in any proceeding, *and all disputed claims for or against the city,* except proceedings and disputed claims in relation to excise or non property taxes. It shall also investigate complaints alleging violation of the labor

law and report thereon to the comptroller." (Emphasis supplied.)

"§ 93d-1.0 Settlement of claims. * * *

*"In adjusting and settling such claims, the comptroller, as far as practicable, shall be governed by the rules of law and principles of equity which prevail in courts of justice.* Claims against the city or against any of the counties contained within its territorial limits, or payable in the first instance from moneys in the city treasury for services rendered or work done or materials or supplies furnished, except:

"1. Claims reduced to judgment, or

"2. Awards, costs, charges and expenses duly taxed or ordered paid in judicial proceedings, or

"3. Claims arising under the provisions of contracts made at public letting in the manner provided by chapter thirteen of the charter and chapter thirteen of the code, or

"4. Claims settled and adjusted by the comptroller, pursuant to the authority of this section, shall not be paid unless an auditor of accounts shall certify that the charges therefor are just and reasonable." (Emphasis supplied.)

### DETERMINATION ON APPEAL

Appellant City of New York contends, *inter alia,* that the comptroller has the statutory authority to settle and adjust claims without there being a prior audit of the claims by his office. It bases such contention on the following previously quoted portion of the language from section 93d-1.0 of the Administrative Code, entitled "Settlement of claims":

"Claims against the city * * * or payable in the first instance from moneys in the city treasury for services rendered or work done or materials or supplies furnished, except: * * *

"4. *Claims settled and adjusted by the comptroller,* pursuant to the authority of this section, *shall not be paid unless an auditor of accounts shall certify that the charges therefor are just and reasonable."* (Emphasis supplied.)

The position taken by New York is specious and untenable. The duties of an auditor of accounts to "audit" a claim and to either certify or not certify that the charges specified in the claim are "just and reasonable" are separate and distinct obligations. Thus, while it is true that a claim "settled and adjusted by the comptroller" (exception 4) may be paid without certification by an auditor of accounts "that the

charges therefor are just and reasonable", it does not follow that the claim itself does not have to be audited in the first instance.

Indeed, it is extremely unlikely that a comptroller would enter into any negotiations with a view toward settling a claim without having before him detailed data (in effect an audit) with respect to the merits of the claim and suggestions from the bureau of audit regarding any possible settlement of the claim. In addition, since settlement negotiations invariably involve "give and take" on both sides, a settlement figure ultimately agreed to by a claimant and the comptroller will undoubtedly vary from the amount advanced by each party at the outset of negotiations. Thus it is not at all unlikely that in many instances, the comptroller, in the exercise of his discretion, may settle a claim in an amount greater than that which the auditor of the claim might have deemed to be "just and reasonable".

It should also be noted that the word "audit", when applied to claims against cities or counties, has been held to mean to hear and to examine an account, and in its broader sense to include adjustment or allowance, disallowance or rejection *(People ex rel. Myers v Barnes,* 114 NY 317; *Glendon v City of New York,* 250 App Div 556, revd on other grounds 276 NY 329). The verb "audit" as used here means simply to examine and to adjust and it clearly implies the exercise of judicial discretion by the comptroller (cf. *People ex rel. Brown v Board of Apportionment & Audit,* 52 NY 224; *People ex rel. Benedict v Board of Supervisors of Oneida County,* 24 Hun 413).

I also conclude that implicit in the provisions of the New York City Charter that the comptroller is authorized and obligated to, *inter alia,* "audit financial transactions of the city", as well as all vouchers before payment (New York City Charter, § 93, subds c, e), is the obligation of the comptroller to audit claims for payment submitted by individuals, private corporations, and certain public bodies. Such conclusion is buttressed by the requirement set forth in subdivision 2 of section 93-1.0 of the Administrative Code that the bureau of audit, one of the four bureaus in the office of the comptroller *"shall audit,* revise and settle all accounts *in which the city is concerned as debtor or creditor"* (emphasis supplied).

■ With respect to when the claim of the respondent City of White Plains "accrued" so as to commence the running of

the six-year Statute of Limitations applicable to an action for money had and received (see CPLR 213), the law seems settled that a cause of action accrues when the right to sue has become vested *(Rason Asphalt v Town of Oyster Bay,* 8 Misc 2d 411). A claim against a municipality accrues when such entity refuses to either make payment or attempt to resolve the dispute *(Acme Bldrs. v County of Nassau,* 36 AD2d 317, 321, affd 31 NY2d 924). A municipality's statutory disability to pay because of the failure to perform an audit does not constitute a refusal to pay and therefore does not signal an accrual of the claimant's cause of action (cf. *Georg Serv. Corp. v Town of Summit,* 28 AD2d 578; *Reuter v Town of Babylon,* 40 AD2d 710). A claimant's cause of action against a governmental body does not accrue until it possesses the legal right to be paid and to enforce its right to payment in court. It follows that where, by contract or statute, the governmental body's obligation to pay is conditioned upon an audit, no suit can be brought by a claimant until the official charged with making the audit has done so and has formally rejected all or some part of the claim *(City of New York v State of New York,* 40 NY2d 659).

It is also relevant to note that New York's conduct in this matter was consistent with the view that an audit was required before the claim could either be allowed, rejected or compromised. In June, 1973 New York asked for and received a detailed, itemized statement of the claim. In October, 1975, after the Third Department dismissed its appeal relating to the water rate fixed in January, 1973, an auditor employed by New York's comptroller visited White Plains for the purpose of inspecting its books relating to the claim. In August, 1976 the audit was completed and the comptroller determined that the amount of overpayments was $181,834.01.

Such conduct, in my opinion, evinced an awareness on the part of New York that *all* claims must be monitored by means of an audit for the public good. Only by auditing "all accounts in which the city is concerned as debtor or creditor" (Administrative Code, § 93-1.0) can New York conserve its limited resources.

■ Having thus concluded that an audit was required by New York's comptroller before payment on White Plains' claim could be made, it follows that the cause of action for money had and received accrued in September, 1976 when the audit was completed and the claim was rejected. Therefore,

the petition was timely served in October, 1976. Accordingly, the judgment of Special Term should be affirmed.

MOLLEN, P. J., HOPKINS and HAWKINS, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated August 19, 1977, affirmed, without costs or disbursements.