Chief Judge Breitel
The issue on this appeal is whether an indigent plaintiff wife in a divorce action and an indigent defendant wife in a similar action are entitled, as a matter of constitutional right, to have the County of Tompkins provide them with counsel or compensate counsel retained by them.
The Supreme Court granted the relief substantially requested by the wives and the Appellate Division reversed. In reversing, the Appellate Division correctly held that, absent a statute therefor, there is no power in the courts to direct the provision of counsel or to require the compensation of retained counsel for the indigent wives out of public funds.*
The mandatory direction to provide counsel to defendants in criminal cases derives from the Federal and State cases applying Federal and State constitutional provisions. These cases recognize that the right to counsel in criminal cases means more than the right to appear by counsel, but that in the event of inability by a defendant to provide his own counsel, particularly because of indigency, the State must provide counsel (Gideon v Wainwright, 372 US 335, 344; People v Witenski, 15 NY2d 392, 397). The underlying principle is that when the State or Government proceeds against the individual with risk of loss of liberty or grievous forfeiture, the right to counsel and due process of law carries with it the provision of counsel if the individual charged is unable to provide it for himself (see, e.g., Argersinger v Hamlin, 407 US 25, 32, 37; Mempa v Rhay, 389 US 128, 134, 136-137; In re Gault, 387 US 1, 34-36; Gideon v Wainwright, 372 US 335, 344, supra; *438 People ex rel. Silbert v Cohen, 29 NY2d 12, 14; People ex rel. Menechino v Warden, 27 NY2d 376, 383; see, also, Matter of Ella B., 30 NY2d 352, 356-357, involving custody of children).
No similar constitutional or statutory provision applies to private litigation.
Inherent in the courts and historically associated with the duty of the Bar to provide uncompensated services for the indigent has been the discretionary power of the courts to assign counsel in a proper case to represent private indigent litigants. Such counsel serve without compensation. Statutes codify the inherent power of the courts (CPLR 1102, subd [a]; People ex rel. Acritelli v Grout, 87 App Div 193, 195-196, affd on prevailing opn below 177 NY 587). Contrary to the statement of the Appellate Division, however, there is no absolute right to assigned counsel; whether in a particular case counsel shall be assigned lies instead in the discretion of the court. The obligation of the Bar to respond is expressed in the Code of Professional Responsibility (Canon 2, EC 2-25).
With respect to criminal actions and related matters arising in a criminal context, early in the articulation of the constitutional right to assigned counsel for indigent defendants it-was anticipated that the private Bar could not carry the burden of uncompensated representation for the large numbers of defendants involved. Consequently, legislation was enacted to provide systematic representation of defendants by assigned counsel and for their compensation (see County Law, art 18-B; see, also, Judiciary Law, § 35). Long before that, of course, there had been statutory provision for assigned compensated counsel in this State, but evidently only in capital cases and certain prosecutions involving imposition of a life sentence (former Code Crim. Pro., § 308).
In the several situations which arise in Family Court there are provisions for publicly-compensated counsel. These involve a mix of State and private action in proceedings affecting the liberty of persons and child custody (Family Ct. Act, §§ 245, 248, 831, 1043).
There are no similar statutory provisions to cover public provision or compensation of counsel in private litigation. Nor under the State Constitution may the courts of this State arrogate the power to appropriate and provide funds (see, e.g., Matter of Sullivan [Alesi], 297 NY 190, 195-196; Jacox v Jacox, 43 AD2d 716, 717). In this connection it may be observed that the State courts, in enforcement of the Federal *439 Constitution, bypass limitations in the State Constitution, but that is not the situation in this case.
As a practical matter, representation of private litigants, too poor to retain their own lawyers, has been accomplished through the discretionary assignment of uncompensated counsel by the courts, and in more populated areas by voluntary legal aid and charitable organizations (see, e.g., Matter of Bartlett v Kitchin, 76 Misc 2d 1087, 1091). Then, too, there are the more recent Federally-funded legal services programs for the poor (see, generally, Samore, Legal Services For the Poor, 32 Albany L Rev 508, 509-512).
Petitioners, on the basis of Boddie v Connecticut (401 US 371), seek to extrapolate a constitutional principle mandating the provision and compensation of counsel in matrimonial matters. Assuming momentarily that the Boddie cáse could be so used to mandate the provision or compensation of counsel, it and the cases establishing the right to assigned counsel in criminal matters could not be used to mandate compensation by public funding. Even in expanding the criminal right to assigned counsel the courts, Federal and State, never presumed to direct the appropriation and expenditure of public funds.
The appropriation and provision of authority for the expenditure of public funds is a legislative and not a judicial function, both in the Nation and in the State. It is correlated, of course, with the taxing power (see NY Const., art XVI, § 1; US Const., art I, § 8, cl 1).
But in any event the Boddie case (supra) does not support, or by rationale imply, an obligation of the State to assign, let alone compensate, counsel as a matter of constitutional right. The Boddie case held narrowly that because the State’s regulation of marriage and divorce, in the generic sense, is an assumption of governmental power, the State could not deny access to its courts in matrimonial actions by exacting a court fee from indigent matrimonial suitors. In Deason v Deason (32 NY2d 93) this court extended the Boddie rationale to apply to the State’s requirement that in certain circumstances costly service by publication of process could not be imposed as a precondition to an indigent bringing a matrimonial action. It was thus held that, under the constitutional principles articulated in the Boddie case, the State or its subdivisions would be required to pay the cost of such access to the courts, if such costly service of process were the only alternative.
*440 On no view of the matter is counsel required in a matrimonial action as a condition to access to the court. Of course, counsel is always desirable, and in complicated matrimonial litigation would be essential. But however desirable or necessary, representation by counsel is not a legal condition to access to the courts (see, generally, Note, A First Amendment Right of Access to the Courts for Indigents, 82 Yale LJ 1055, 1066-1067). Access to the courts was the only problem to which the Boddie and Deason cases were addressed.
Of course, the indigent matrimonial litigant is not without practical recourse. The need of counsel for the indigent has been and is still being handled in large measure in populated communities by legal aid, Federally-funded legal services programs, and voluntary organizations. Thus in the City of New York the Legal Aid Society, and other legal services agencies, handle annually a large number of matrimonial cases. The slack and conflict-of-interest problems are taken up by the discretionary assignment of uncompensated counsel under CPLR 1102 (subd [a]). Moreover, because of the court’s power in matrimonial cases to allow counsel fees in favor of the wife against the husband, and the availability of conditional fee arrangements, matrimonial litigation to be "unprofitable” to fee-charging lawyers must generally involve both spouses being indigent.
There is still another aspect to the matter. As in so many things it is the existence of assets or income which creates complications, and so it does in matrimonial litigation. Hence, in the absence of disputes over money or the custody of children, matrimonial litigation is likely to be quite simple, and if a lawyer is required, his task quite simple.
None of this is to say that the need and burden of representing indigent matrimonial suitors will not currently overtax voluntary private resources and the voluntary services available from the Bar on a noncompensated basis. The need and burden may become even greater , in the future, especially with liberalized divorce laws. All of this, however, is a problem to be addressed to the Legislature which has the power to appropriate the funds required for publicly-compensated counsel.
It merits added comment that among the many kinds of private litigation which may drastically affect indigent litigants, matrimonial litigation is but one. Eviction from homes, *441 revocation of licenses affecting one’s livelihood, mortgage foreclosures, repossession of important assets purchased on credit, and any litigation which may result in the garnishment of income may be significant and ruinous for an otherwise indigent litigant. In short, the problem is not peculiar to matrimonial litigation. The horizon does not stop at matrimonial or any other species of private litigation.
As exemplified in some areas in the State, the undue burden which may be placed on the private Bar by assignments under CPLR 1102, may also become intolerable and some might say rank as a violation of the constitutional rights of lawyers (compare Menin v Menin, 79 Misc 2d 285; Bedford v Salt Lake County, 22 Utah 2d 12, 14-15 with People ex rel. Whedon v Board of Supervisors, 192 App Div 705, 706; People ex rel. Hadley v Supervisors of Albany County, 28 How Prac 22, 26-27, cited with approval in People ex rel. Ranson v Board of Supervisors of Niagara County, 78 NY 622; State v Rush, 46 NJ 399, 407-409).
Lastly, it would be injudicious, as some have suggested, to mandate in all matrimonial cases involving indigents the assignment of counsel without the possibility of provision for compensation. It might then be unfair to the Bar to impose such a burden on them. Inevitably too, the availability of mandated assigned counsel might very well increase the litigation in any one area, as it has indeed in the criminal area not only as to trials but as to appeals as well. All of this suggests questions of policy and fiscal impact which the courts should not venture to decide, even if they had the power, which they do not.
In the meantime, courts and litigants must make do with what exists and with what lies within the powers and capacity of the courts and the Bar. The courts have a broad discretionary power to assign counsel without compensation in a proper case (CPLR 1102, subd [a]; see, also, People ex rel. Acritelli v Grout, 87 App Div 193, 195-196, affd on prevailing opn below 177 NY 587, supra). Voluntary organizations and Federally-funded programs play their role. As for the Bar they follow, as they are obliged to do, the canons of their profession in performing obligations to the indigent and duties imposed by assignment of the courts. If more is required, the relief must be provided by the Legislature. The fundamental is that the courts constitute but one branch of government. The absence of appropriated funds and legislation to raise taxes under our *442 State constitutional system, as in the rest of the Union, is not a judicially-fillable gap.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

 The procedural status of the appeal is obscure. Originally, two separate motions were made in separate matrimonial actions. Thereafter, by some alchemy, orders and the appeal in the Appellate Division became consolidated and entitled as if in a special proceeding outside the actions. However faulty the procedures, the captions, or the practices adopted, the last order or judgment would be appealable either as a final order in a special proceeding or as an order affecting a third party, namely, the County of Tompkins, under the so-called third party principle (Cohen and Karger, Powers of the New York Court of Appeals, pp 181-182, 186-189).