OPINION OF THE COURT
Phyllis B. Gangel-Jacob, J.
That branch of defendant’s motion seeking leave to defend this CPLR article 13-A civil forfeiture action (article 13-A action) as a poor person is granted without opposition. That branch of defendant’s motion requesting that counsel be as *901 signed to defend him in this action is, in the court’s discretion, denied.
An article 13-A action "may be commenced by the appropriate claiming authority against a criminal defendant[1] recover the property which constitutes the proceeds of a crime, the substituted proceeds of a crime or an instrumentality of a crime * * * Any action under this article must be commenced within five years of the commission of the crime and shall be civil, remedial, and in personam in nature and shall not be deemed to be a penalty or criminal forfeiture for any purpose” (CPLR 1311 [1]). "The legislative purpose sought to be achieved through the enactment of CPLR article 13-A was 'to take the profit out of crime’ (1984 McKinney’s Session Laws of NY, at 3627-3628)” (Morgenthau v Citisource, Inc., 68 NY2d 211, 217 [1986]). Thus the statute expressly provides that an article 13-A action is to be civil, remedial and in personam in nature and is not to be confused with a criminal proceeding (see, CPLR 1311 [1]).
Defendant-movant Modesto Garcia is a prisoner of the State of New York, incarcerated at Marcy Correctional Facility in the County of Oneida. Robert Morgenthau, as District Attorney of New York County, has brought the underlying article 13-A action against defendant to recover the sum of $2,976 alleged to be the proceeds of a felony crime committed by defendant. Defendant, claiming indigency (which is not disputed), has applied to this court, ostensibly under CPLR 1102, for assignment of counsel. This is in addition to his application under CPLR 1101 for leave to proceed as a poor person.
In certain circumstances, for those persons unable to afford legal representation, the courts of this State must assign counsel. Under the NY Constitution an indigent defendant charged with a crime has the right to appointed counsel (NY Const, art I, § 6). To enforce this right, each county is legislatively required to establish a defined plan to provide indigents charged with a crime with counsel at county expense (see, County Law, art 18-B, § 722). An example of such a plan is the system in effect for the counties that comprise New York City.
Initially, representation of most indigent criminal defen *902 dants in New York City devolves upon the Legal Aid Society (Society), a legal organization that has formally contracted with the city to represent those defendants charged with a crime who cannot afford counsel. Lawyers from the Society are almost always present at criminal arraignments for the benefit of those individuals appearing without counsel (see, e.g., CPL 170.10, 180.10). If for some reason the Society cannot represent a defendant charged with a crime (e.g., on conflict of interest grounds), or is prohibited from representing such a defendant (e.g., defendants charged with homicide crimes), private attorneys will be appointed by the court under article 18-B of the County Law. These "18-B attorneys” are paid by the county in which they qualify to act as such according to a statutory schedule (see, County Law § 722-b).
Apart from criminal proceedings, indigent defendants are also entitled to representation by article 18-B attorneys or Society attorneys under Family Court Act §§262, 1120, and SCPA 407 (see, County Law § 722). Section 261 of the Family Court Act, in part, provides that ”[p]ersons involved in certain family court proceedings may face the infringements of fundamental interests and rights, including the loss of a child’s society and the possibility of criminal charges, and therefore have a constitutional right to counsel in such proceedings” (Family Ct Act § 261),[2] and codifies and extends case law and administrative practice of providing counsel for indigent persons, inter alia, in child protective proceedings, family offense proceedings, custody proceedings, proceedings to enforce a support order and paternity cases. In addition, section 35 of the Judiciary Law provides discretion to the court to assign counsel, to be paid out of public funds under a prescribed payment plan, to represent indigent respondents for hearings ordered in habeas corpus proceedings, commitment proceedings or custody or adoption proceedings concerning children of parents who are alleged to be mentally ill or retarded. Under section 770 of the Judiciary Law the court has discretion to assign counsel in civil contempt proceedings. Under Family Court Act §§ 245, 248 the court may appoint Law Guardians, attorneys also under contract with the State, for juvenile *903 delinquents or persons in need of supervision and other specified minors. Of note is that in all of these proceedings there is the danger of grievous forfeiture or the deprivation of a fundamental liberty right.
Except as set forth above, there appears to be no absolute right in indigent civil litigants to assigned counsel (see, Matter of Smiley, 36 NY2d 433 [1975]) and there is no system in place which publicly compensated attorneys may be assigned to represent such indigent litigants in civil cases. Thus, while the court has discretion to assign counsel under CPLR 1102, if it were to assign such counsel in this civil action, there is no mechanism by which the court may direct the county, the State or any other agency to pay his fee. Counsel appointed under CPLR 1102 ordinarily must serve gratuitously[3] as the court does not have statutory authority to direct compensation to be paid to such assigned counsel out of public funds (see, Matter of Smiley, 36 NY2d 433 [1975], supra; Jacox v Jacox, 43 AD2d 716, 717 [2d Dept 1973]; cf., Matter of Goresen v Gallagher, 108 AD2d 1097 [3d Dept 1985]).
The New York Court of Appeals has recognized that the lack of a statutory scheme to provide publicly funded counsel to indigent civil litigants may require some of them to come into court without counsel, but has balanced this against "the undue burden which may be placed on the private Bar by assignments under CPLR 1102, [which] may also become intolerable and some might say rank as a violation of the constitutional rights of lawyers” (Matter of Smiley, supra, at 441; see also, Stephens v State of New York, 93 Misc 2d 273 [Ct Cl 1978]; Menin v Menin, 79 Misc 2d 285). Consequently, the Smiley court found that courts should not routinely assign private counsel without compensation under CPLR 1102 except in a "proper case” (supra, at 441), which would include cases where indigent civil litigants face grievous forfeiture or loss of a fundamental right.
This court wishes to here note that each day large numbers of indigent litigants enter this State’s courtrooms facing, among other things, the risk of loss of their property. To name a few, they include tenants in eviction proceedings, matrimo *904 nial litigants, debtors in foreclosure and repossession proceedings and welfare recipients in government hearings. Most of them cannot afford private counsel and, under Matter of Smiley (supra) and its progeny, are not routinely assigned counsel under CPLR 1102 (see, e.g., Jacox v Jacox, supra; Matter of Romano, 109 Misc 2d 99 [Sur Ct, Kings County 1981]; Wilson v State of New York, 101 Misc 2d 924 [Ct Cl 1979]; Stephens v State of New York, supra; Menin v Menin, supra; cf., 444 W. 54th St. Tenants Assocs. v Costello, 138 Misc 2d 5 [Civ Ct, NY County 1987]).
This court also recognizes that while all attorneys have a professional obligation to represent indigent persons (Code of Professional Responsibility Canon 2), the response to this obligation generally comes from within the Bar itself, and not by way of judicial mandate. While the CPLR article 13-A action here, if successful, will deprive this defendant of what in the circumstances might represent a fairly large sum of money to him, this risk cannot be said to be more worthy of the assignment of uncompensated counsel than, e.g., the risks faced by indigent civil litigants in proceedings brought to discontinue public assistance payments (see, Matter of Brown v Lavine, 37 NY2d 317 [1975]), or the risks faced by indigent civil litigants in matrimonial proceedings (where, inter alia, complex questions of support and division of property often are at issue) (see, Matter of Smiley, supra). In this court’s view, defendant’s cause in this civil action is neither as compelling, nor does it involve such a grievous forfeiture or loss of rights as to constitute a "proper case” in which to appoint uncompensated counsel on his behalf.
That this defendant is a prisoner incarcerated on a criminal offense in a State facility does not change this court’s conclusion. This court is aware that while generally suspending his civil rights, defendant’s imprisonment does not foreclose his right to defend himself in this civil suit while he is in jail (see, Civil Rights Law § 79; see also, Stephens v State of New York, supra; Garner v Garner, 59 Misc 2d 29 [Sup Ct, Kings County 1969]; Bagley v Bagley, 57 Misc 2d 388 [Sup Ct, Kings County 1968]). However, the action at bar is a civil action for which assignment of uncompensated counsel is neither mandated nor provided (see, Stephens v State of New York, supra). Nevertheless, this defendant has the same options available to him as are available to other indigent civil litigants. He may attempt to retain private counsel to represent him in this case where a sum of money is involved pursuant to a contingency *905 fee agreement (cf., Wilson v State of New York, supra); he may request legal assistance by communicating with the Bar of this State whose members, pro bono publico, may agree to represent him free of charge in this matter; he may also request legal assistance from other voluntary or government-funded legal organizations of this State (e.g., the American Civil Liberties Union) that specifically offer their services to indigent litigants.
Thus, the defendant has several options available to him in defending this action without this court, in the absence of legislative mandate, having to "put the burden” of his representation on the Bar by assigning uncompensated counsel. (Matter of Smiley, 36 NY2d 433, supra.)
Accordingly, the motion is granted only to the extent that defendant is permitted to proceed as a poor person, and is otherwise denied.

. "A 'criminal defendant’ (CPLR 1310 [9] [a]) is a person who * * * has been convicted of a 'post-conviction forfeiture crime’ defined as any felony found in the Penal Law or any other chapter of the consolidated laws of the State (CPLR 1310 [5]).” (Morgenthau v Citisource, Inc., 68 NY2d 211, 218 [1986].)

. But see, Lassiter v Department of Social Servs. (452 US 18 [1981]) to the effect that the Fourteenth Amendment of the US Constitution does not require automatic appointment of counsel in proceedings to terminate parental rights; rather the decision must be made on a case-by-case basis. (See also, Menin v Menin, 79 Misc 2d 285 [Sup Ct, Westchester County 1974], affd 48 AD2d 904.)

. While under CPLR 1102 (d) the court is permitted to direct that counsel appointed thereunder be paid a reasonable sum as compensation out of any recovery realized in an action, movant here has not shown that he has a meritorious defense to the underlying CPLR article 13-A action sufficient to persuade the court that any recovery out of which a court-appointed attorney might be compensated would be realized by movant.