OPINION OF THE COURT
Per Curiam.
Order dated December 16,1988 affirmed, with $10 costs.
Order dated December 23, 1988 modified and tenant’s post-eviction vacatur motion granted only to the extent of reducing the amount of rent arrears and/or use and occupancy due under the consent judgment to $5,904, representing the period June 1987 through May 31, 1988, without prejudice to landlord’s right to bring a plenary action for earlier unpaid rent; as modified, order affirmed, without costs.
The residential nonpayment petition, brought in January 1988 by landlord New York City Housing Authority, sought rent for the months of June 1987 through January 1988. Following tenant’s default in answering the petition, tenant, unrepresented by counsel, entered into a consent judgment dated April 12, 1988 (not contained in the record on appeal). A second consent judgment dated May 31, 1988, extended tenant’s payment deadline to June 30, 1988. Tenant failed to make any payments under either consent judgment. Tenant was evicted on November 28, 1988, based upon the May 31, 1988 consent judgment, five months after the payment deadline.
Tenant, acting pro se, promptly moved to vacate the consent judgment of possession in the sum of $9,306.46 and to be restored to possession. Subsequently, in mid-December 1988, tenant moved to proceed as a poor person and for the assignment of counsel pursuant to CPLR 1101 and 1102 and the Due Process Clauses of the Federal and State Constitutions. Tenant’s motion papers, this time, were prepared by a legal services organization. In support of that relief, tenant stated that she had been unsuccessful in retaining counsel from various legal services organizations, that she had no income and was in the process of applying for an emergency rent grant, that she had never been served with notice of the *387 petition and petition and that unspecified repairs had not been made in her apartment for many years.
The Housing Court granted tenant’s motion to the extent of allowing her to proceed as a poor person, but refused to appoint counsel. In a subsequent order, the court below denied tenant’s motion for vacatur relief.
We affirm the denial of court-appointed counsel, but modify the order denying vacatur relief to the limited extent indicated above.
An indigent’s presumptive right to appointed counsel has been recognized by the Supreme Court only when the litigant "may lose his physical liberty if he loses the litigation” (Lassiter v Department of Social Servs., 452 US 18, 25). "|I]t is the defendant’s interest in personal freedom * * * which triggers the right to appointed counsel” and "[i]t is against this presumption that all the other elements in the due process decision must be measured” (supra, at 25, 27).* The presumption against appointed counsel in a case where liberty is not at stake can be rebutted, based upon the net weight of three due process factors, as set forth in Mathews v Eldridge (424 US 319, 335 [1976]). The three Eldridge factors are (1) the private interests at stake, (2) the risk of erroneous determinations under current procedures (absent an attorney), considered with the probable value of the suggested procedural safeguard and (3) the Government interests at stake.
Balancing the Eldridge factors and weighing them against the presumption, we find that while tenant’s property interest in continued possession is certainly significant, it is not so fundamental an interest mandating a due process right to assigned counsel. Notably, we know of no jurisdiction to date that has established such a constitutional right to counsel for indigent tenants faced with eviction from public housing.
Our own New York State Court of Appeals has similarly found that an absolute right to counsel exists only where a litigant faces "risk of loss of liberty or grievous forfeiture” at the hands of the State or Government (Matter of Smiley, 36 NY2d 433, 437). The Smiley majority stated, in dictum, that "eviction from homes” (36 NY2d, at 440) is ordinarily one of "the many kinds of private litigation which may drastically *388 affect indigent litigants,” but for which appointed counsel is not constitutionally required (36 NY2d, at 440). While citing the "undue burden” which assignment of counsel may place on the private Bar, Smiley emphasized the obligation of the Bar to provide as best it can uncompensated service to the poor (Code of Professional Responsibility Canon 2; EC 2-25), as well as the role of the Legislature, which has the power to appropriate funds for publicly compensated counsel (see, e.g., Family Ct Act §§ 261, 262).
Our prior determination in Hotel Martha Washington Mgt. Co. v Swinick (66 Misc 2d 833 [App Term, 1st Dept]) is not controlling. Our prior extrapolation there of Boddie v Connecticut (401 US 371 [1971]) to mandate the assignment of counsel if indigent tenants, faced with eviction, have a meritorious defense and are unable to obtain free counsel, was rejected years later by the Court of Appeals in Smiley (supra). Specifically, the Boddie case (which dealt only with court fees and access to the courts, not with appointment of counsel) "[did] not support, or by rationale imply, an obligation of the State to assign, let alone compensate, counsel as a matter of constitutional right” (Matter of Smiley, 36 NY2d, at 439).
Absent a constitutional right to assigned counsel for indigent public housing tenants in Housing Court, the controlling legal authority remains CPLR 1102 (a), which addresses the assignment of counsel as part of the granting of poor person relief. That section provides that "[t]he court in its order permitting a person to proceed as a poor person may assign an attorney” (CPLR 1102 [a]; emphasis added).
The statute is phrased in " 'unambiguous’ language, with 'words plain and clear,’ such that the only possible construction of the statute as it currently reads is that CPLR 1102 (a) is discretionary and not * * * mandatory” (Donaldson v State of New York, 156 AD2d 290, 293 [1st Dept]). Thus, courts have broad discretionary power to assign counsel without compensation in a "proper case” (Matter of Smiley, 36 NY2d, at 441, supra).
In the instant case, the Housing Court did not abuse its discretion in denying tenant’s posteviction motion for court-appointed counsel under CPLR 1102 (a) since no fundamental unfairness resulted. In particular, tenant failed to set forth a facially sufficient meritorious defense to the underlying nonpayment proceeding. Significantly, tenant’s payment default did not result from any bureaucratic delay by the Department *389 of Social Services (DSS) in making timely payment, nor from the mistaken failure of DSS to provide rent moneys to which tenant was legally entitled. Indeed, tenant was denied financial assistance by DSS in or about May 1988 during the pendency of the proceeding, six months prior to her eviction.
Furthermore tenant, acting pro se, successfully obtained two extensions of the payment deadline in April 1988 and May 1988, yet failed to tender any part of the arrears contained in the consent judgments during the lengthy interval prior to her November 1988 eviction. While tenant apparently had no income at or about the time of her eviction, tenant was employed during at least the majority of the first half of 1988 when arrears were accumulating. Landlord cannot be faulted because the tenant, unrepresented by counsel, simply lacked the funds to live up to her agreements.
Nor did any of tenant’s remaining assertions below constitute bona fide defenses to the nonpayment proceeding. In short, the presence of counsel could not have made a determinative difference in the outcome of the litigation. We further note that tenant waited nearly 11 months before moving for assignment of counsel, following repeated applications for vacatur relief in April, May, June and November 1988.
Finally, tenant failed to establish good cause for vacatur of the consent judgment of possession and warrant of eviction. However, since the May 31, 1988 consent judgment inequitably included rent arrears ($3,402.46) dating back to earlier months (Nov. 1985 through May 1987) not encompassed by the nonpayment petition, we have reduced landlord’s recovery to $5,904, without prejudice to landlord’s right to bring a plenary action for earlier unpaid rent.
Sandifer, J. P., Parness and Miller, JJ., concur.

 In Lassiter, the court held that due process did not necessarily require that counsel be furnished an indigent mother in a termination or parental rights proceeding.