OPINION OF THE COURT
Robert Webster Oliver, J.
It is ordered that the branch of this motion by the defendant *577 for an order directing the plaintiff to pay her counsel fees pursuant to Domestic Relations Law § 237 is denied with leave granted to the defendant to renew her application upon a proper showing by appropriate proofs, and it is further ordered that the branches of this motion by the defendant for an order: “transferring the custody-modification case to the Suffolk Family Court”, or assigning free counsel to her, is denied.
In this action for a divorce and ancillary relief the defendant has moved by order to show cause for the following relief:
(1) Requiring the plaintiff to pay her counsel fees under section 237 of the Domestic Relations Law; or
(2) Transferring the custody case to the Family Court (Suffolk County) under article VI, § 13 of the New York State Constitution, Domestic Relations Law § 251 and Family Court Act § 467; or
(3) Assigning free counsel to her in the Supreme Court pursuant to the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and article I, § 11 of the New York State Constitution; or, alternatively, pursuant to article VI, § 7 of the New York State Constitution, Family Court Act § 262 and CPLR 1102.
One of the issues in dispute in this matter is the custody of the parties’ young children, Stephen and Dorothy.
The defendant, in her affidavit annexed to the order to show cause, stated that she has agreed to the discharge of her attorney to whom she allegedly owes more than $7,000. She alleges that she currently receives public assistance from the Suffolk County Department of Social Services, and works part time as a bridal hostess. She asserts that she has no savings or assets that she can use to pay a lawyer and that she is unable to find an attorney to represent her in this case. The defendant further asserts that the plaintiff husband’s “employment situation is unstable” and that he has tried many unskilled and semiskilled jobs and she observes that “[t]he probability of an attorney getting paid by him is extremely low.” Defendant’s allegations concerning plaintiffs ability to pay are unsupported by any documentary evidence. The court does note that plaintiff has retained, and is represented by, counsel, indicating that plaintiff has, at least, some resources.
The defendant has received the assistance of counsel who has agreed to represent her solely for the purpose of making the instant application. This application is one of nine such applications made to this court.
*578 In her supporting affidavit, Jane C. Reinhardt, Esq., the IOLA Social Justice Fellowship attorney at the Jacob D. Fuchs-berg Law Center of Touro College, advises that she has petitioned the Supreme Court of the State of New York (County of Suffolk) to assign free legal counsel in the following cases on behalf of indigent custody litigants.
(1) People ex rel. Pirolo v Pirolo (Blydenburgh, J.)
Presumably, this was a habeas corpus proceeding. Defendant wife sought free counsel. The court made observations regarding the apparent availability of resources to her, evidenced by her travel, clothing and personal appearance, and determined that she was not indigent.
(2) Moore v Moore (Costello, J.)
This was a postdivorce judgment application. Plaintiff wife moved for assignment of counsel. It appears that the only issue involved was custody. The court said: “Because the same factual issues were brought before the Family Court immediately preceding the respondent’s application to this Court, this matter is an appropriate one for referral.” The court granted the motion to refer the matter to Family Court.
(3) Garner v Garner (Emerson, J.)
This was an action for divorce. Defendant wife sought assignment of counsel or referral to the Family Court. The court found that “the defendant has made a sufficient showing of indigency and the motion is granted to the extent that counsel shall be assigned with respect to the issue of custody only.” This case is on appeal.
(4) Olivieri v Olivieri (Baisley, J.)
This was a postdivorce proceeding. Defendant husband brought a motion to punish the plaintiff wife for contempt for her denial of his visitation rights. Plaintiff wife sought appointment of counsel to respond to the motion. Plaintiff claimed indigency, but did not seek an award of counsel fees pursuant to Domestic Relations Law § 237, nor did she request referral to Family Court. The court denied the motion without prejudice to her right to make a motion for counsel fees pursuant to Domestic Relations Law § 237 or to move to transfer the matter to Family Court. The court also said that the attorney purporting to represent the plaintiff wife for the limited purpose of the motion could not appear for such a limited purpose and was counsel for all purposes until further order of the court.
(5) Neftleberg v Neftleberg (Blydenburgh, J.)
The court’s June 24, 1998 order does not specify the nature of the proceeding, but the order refers to “respondent” and “petition.” (The caption refers to the parties as plaintiff and defendant.) Defendant (or respondent) wife sought free counsel. *579 The court appointed counsel pursuant to County Law article 18-B “for custody purposes only,” the order stating that it is based on the reasoning of Justice Emerson in Garner v Garner (referenced above). This case is on appeal.
(6) Mauro v Mauro (Blydenburgh, J.)
The court’s April 2, 1998 order does not specify the nature of the proceeding. Plaintiff wife sought free counsel. The motion was denied as moot as plaintiff obtained an attorney on a pro bono basis with regard to the custody-visitation issues before the court.
(7) Nielsen v Nielsen (Blydenburgh, J.)
Apparently this application was referred to a Judicial Hearing Officer. The court has no further information.
(8) Conigliaro v Conigliaro (Emerson, J.)
This application was withdrawn.
(9) McGee v McGee (180 Misc 2d 575 [Oliver, J.])
This is the instant case.
1. The branch of the defendant’s order to show cause for an order compelling the plaintiff husband to pay defendant’s counsel fees pursuant to Domestic Relations Law § 237 is denied without prejudice to renewal.
At the end of her affirmation in support of motion, defendant’s counsel raises various arguments that “fee-shifting” to the plaintiff husband would be unworkable since “no New York attorney would work for the defendant on the basis of an order requiring plaintiff to pay her fee, given that defendant’s own creditworthiness is diminished by her condition of indebtedness and that the plaintiff, on information and belief, lacks the ability or trustworthiness to pay defendant’s lawyer in addition to his own.” Without credible evidence or proof, the court is unable to determine if this representation is based upon current fact. Further, Domestic Relations Law § 237 is the existing law of this State and myriad cases abound where a spouse was ordered to pay, and did pay, the other spouse’s counsel fees. If plaintiff was so ordered and willfully refuses to obey the order there are remedies: Domestic Relations Law §§ 243, 244, 244-a, 244-b, 244-c and CPLR 5241 and 5242. These statutes were all enacted by the Legislature to aid a spouse in effecting payment of such court order. Further, Domestic Relations Law § 245 provides the remedy of contempt which, among other things, may result in a jail sentence for a recalcitrant spouse. There is nothing before this court to establish that existing remedies will not serve defendant if the court were to order plaintiff to pay defendant’s counsel fees. Defendant’s argument may be likened to a claim of anticipatory breach and is unavailing.
*580 2. Until defendant has presented proof of her own indigence and that of plaintiff, this court is loath to refer the custody part of this case to Family Court, even if that financial circumstance were, alone, sufficient reason to warrant a transfer.* Under Family Court procedures, to qualify for free legal counsel pursuant to Family Court Act § 262, the defendant must have her eligibility determined by that court or an agency that provides free legal counsel to litigants in that court pursuant to contract, agreement or otherwise and, based upon the order to show cause before this court, defendant has not presented sufficient proof to establish that she is able to meet such threshold.
Defendant argues that this court is bound to refer this matter to Family Court or appoint counsel in Supreme Court citing Borkowski v Borkowski (90 Misc 2d 957 [Sup Ct, Steuben County 1977]). Contrary to Borkowski, this court concludes that it would not be appropriate, in this case, to apply the provisions of Family Court Act § 262 (a) (v) to this court. The Legislature has not seen fit to apply Family Court Act § 262 (a) (v) to the Supreme Court, but only to the Family Court. If the Legislature had intended these provisions to apply to this court, the Legislature would have made an unambiguous statement to that effect. This they did not do, even though the Court of Appeals ruled, prior to the enactment of Family Court Act § 262, that indigent litigants similarly situated to defendant were not entitled to free legal counsel in the Supreme Court (Matter of Smiley, 36 NY2d 433 [1975]).
In trying to divine the intent of the Legislature, it must be remembered that the Family Court was created for the purpose of, among others, assisting the Supreme Court in matters where the Legislature vested the Family Court with jurisdiction and, in particular, matters involving children (see generally, Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C251:1, at 838-840). In specifying the assignment of counsel in Family Court Act § 262, the Legislature limited such assignments exclusively to actions relating to treatment or custody of children with the sole exception of subdivision (a) (vi), which refers to contempt. The Legislature did not give the Family Court authority in matters of divorce, separation or annulments. Thus, this court is not convinced that, in the instant matter, Family Court Act *581 § 262 (a) (v), if applied to this case, would be consistent with the specified and specific legislative intent.
In Family Court Act § 262 (a), the Legislature has provided the Family Court with a limited power to assign counsel for indigent persons in specifically enumerated cases, including: those where “the parent of any child [is] seeking custody or contesting the substantial infringement of his or her right to custody of such child” (Family Ct Act § 262 [a] [v]).
Family Court Act § 262 is apparently predicated upon Family Court Act § 261 as both sections of law were enacted by chapter 682, § 2 of the Laws of 1975 and it appears that these two sections are intended to be read together. Family Court Act § 261, a perplexing piece of legislation, provides that: “Persons involved in certain family court proceedings may face the infringements of fundamental interests and rights, including the loss of a child’s society and the possibility of criminal charges, and therefore have a constitutional right to counsel in such proceedings * * * [t]he purpose of this part is to provide a means for implementing the right to assigned counsel for indigent persons in proceedings under this act.”
The Legislature did not, however, identify this unenumerated “constitutional right.” Nor did the Legislature enumerate the “certain family court proceedings” to which this provision applies. Apparently, Family Court Act § 262 specifies these proceedings. However, the use of the phrase “the loss of a child’s society” would lead to the conclusion that the legislative intent was to apply this statute to proceedings, not relating to custody with attendant visitation with the child awarded to the noncustodial parent, but those where the litigant’s contact with the child is terminated. “Society” equates with “companionship” (Merriam-Webster’s Collegiate Dictionary) not with custody. “Custody” equates with “immediate charge and control” (Merriam-Webster’s Collegiate Dictionary). Awarding custody, with visitation to the noncustodial spouse, is not a deprivation of the child’s society. The purpose of visitation is that warring spouses may still share the child’s society. Therefore, it appears that the legislative intent (Family Ct Act § 261) and the eo nomine provisions of Family Court Act § 262 may not be the same.
Qualification for court-appointed free legal counsel ordinarily requires a risk of personal liberty. A reading of Family Court Act § 261 discloses that the statute is consistent with this requirement, by providing in the conjunctive: “the loss of a child’s society and the possibility of criminal charges” (emphasis *582 added). However, the Legislature has dispensed with this requirement as far as Family Court Act § 262 is concerned. In enacting section 261, it appears that the Legislature kept in mind the distinction between criminal charges (or civil-charges that could result in criminal sanctions) and purely civil matters. This comports with Matter of Smiley (supra). In enacting Family Court Act § 262, it appears that the Legislature intended to abolish the loss of liberty requirement in cases specified in that Act. Thus, this section of law appears intended solely to be applied by Family Court. Nowhere does it appear that the Legislature intended this dispensation to apply to the Supreme Court.
Justice Stewart in Lassiter v Department of Social Servs. (hereinafter DSS) (452 US 18, 25 [1981]), a neglect proceeding brought by DSS, provided that: “The pre-eminent generalization that emerges from this Court’s precedents on an indigent’s right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.” The Court went on to say: “Significantly, as a litigant’s interest in personal liberty diminishes, so does his right to appointed counsel.” (Supra, at 26.)
Here, in the matter sub judice, there is a civil dispute between a husband and a wife over physical custody of the children. There is no governmental involvement nor is the possibility of loss of liberty alleged or apparent.
Although the Supreme Court is constitutionally empowered to exercise every power of the Family Court, it is within the discretion of the Supreme Court to hear a custody issue or refer it to the Family Court (Kagen v Kagen, 21 NY2d 532 [1968]; Borkowski v Borkowski, 90 Misc 2d 957, supra). In this case, the court is of the opinion that to assume to itself the empowerment of Family Court Act § 262 would be inappropriate.
For the Supreme Court to be consistent with the body of law relating to appointment of free counsel to indigent litigants in civil actions, it would appear more suitable to leave this legislative dispensation exactly where the Legislature placed it: the Family Court.
When viewed in light of the above, the court declines to apply this section of law (Family Ct Act § 262) to the Supreme Court in the instant case.
3. Defendant’s counsel argues that “Unquestionably, the defendant would be eligible for free assigned counsel in defend *583 ing her custody of her children if the custody issue were referred to the Family Court”.
This assumption is without the necessary foundation. Defendant’s condition precedent to such free representation is her establishment, by adequate proof, that: (a) she is unable to afford counsel, (b) plaintiff cannot afford to pay defendant’s counsel and (c) together they cannot afford (or contribute to) defendant’s counsel fees. No proof, other than defendant’s affidavit, is before the court. More than a simple claim of indigency is required: a showing (probably requiring a hearing) must be made establishing by adequate proof the inability, jointly and/or severally, of both parties to recompense counsel before the court would resort to the public purse.
4. Thereafter, defendant bases her argument for the appointment of free legal counsel upon several constitutional (Federal and New York State) grounds.
Before addressing defendant’s specific arguments, the court finds that there is no constitutional right or entitlement which requires this court to assign free legal counsel in a private, civil action and, in particular, this matrimonial action (Matter of Smiley, 36 NY2d 433, supra).
Having said that, the court will address defendant’s constitutional arguments:
I
Defendant’s counsel argues that failure to provide defendant with free counsel is in violation of her Federal and State constitutional rights under the Equal Protection Clauses of both Constitutions. Under this subheading, several positions are addressed on defendant’s behalf:
1. Defendant’s counsel concedes that, in this particular litigation, neither Constitution requires appointment of free legal counsel in the New York State Supreme Court (citing Matter of Smiley, supra).
Defendant’s counsel also concedes that Family Court Act §§ 261 and 262 were enacted by the New York State Legislature after the Smiley decision (supra) was handed down. It may be fairly assumed that this Legislature was aware of this holding of the Court of Appeals and, knowingly, limited Family Court Act § 262 to the Family Court. Further, since 1975, the Legislature has not seen fit to amend the law to include the Supreme Court.
Defendant’s counsel goes on, however, to argue that a failure by the Supreme Court to apply Family Court Act § 262 to a *584 case before the Supreme Court is a violation of the Equal Protection Clauses, reasoning that the Legislature wrongly created two classes: “one class of poor custody-case litigants (parties in Family Court)” where free legal counsel is available while denying such free legal counsel to “a similarly situated class of poor custody-case litigants (parties in Supreme Court).”
The court finds this argument to be founded upon a faulty premise.
The “class” is comprised of indigent persons in child custody litigation. What defendant is arguing is forum, not class.
All persons in. the class who qualify are entitled to free legal counsel in the Family Court. Defendant argues that, as a member of the class, she is entitled to select her forum. However, the Legislature has already done that and selected the Family Court.
It is familiar law that there is a strong presumption in favor of the constitutionality of a legislative enactment (People v Smith, 63 NY2d 41 [1984], cert denied 469 US 1227 [1985], reh denied 471 US 1049 [1985]). Every presumption will be indulged in to support and sustain legislation and it will be assumed that the Legislature intended to enact a statute which is in harmony with the Federal and State Constitutions. Every presumption is in favor of the validity of the statute and, likewise, every intendment favors its validity (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [b]). As Chief Judge Conway held in Wiggins v Town of Somers (4 NY2d 215, 218-219 [1958], rearg denied 4 NY2d 1046 [1958], remittitur amended 4 NY2d 1045 [1958]): “Legislative enactments are presumed to be constitutional, i.e., they are presumed to be supported by facts known to the Legislature [citations omitted]. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt [citations omitted] * * * fit is only as a last resort’ that courts strike down legislative enactments on the ground of unconstitutionality [citations omitted].” (See also, Matter of McGee v Korman, 70 NY2d 225 [1987].)
The classification, to wit: indigent litigants in custody cases, is not disputed by defendant. No argument can be made that defendant has more rights or better protections in Supreme Court than in Family Court. If that is her argument, defendant must prove, beyond a reasonable doubt, that indigent custody litigants in Family Court are, in some way, deprived of rights that they would have in Supreme Court. This court refuses to countenance an argument that appears to infer that the Family Court is not fully able to resolve child custody cases *585 and that litigants in Family Court are, as defendant argues, relegated to Family Court simply because they are indigent. In fact, in referred cases, the Family Court exercises the same powers that the Supreme Court possessed (Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C251:1, at 838-840).
II
Defendant argues that the failure to appoint free legal counsel in Supreme Court “denies her free access to the Court.” This argument is not consistent with existing law.
The Supreme Court is available to defendant if she wishes to act as her own counsel. The Family Court is available to defendant, and there the Legislature has provided for free counsel, if defendant so desires and qualifies.
“On no view of the matter is counsel required in a matrimonial action as a condition to access to the court. Of course, counsel is always desirable, and in complicated matrimonial litigation would be essential. But however desirable or necessary, representation by counsel is not a legal condition to access to the courts” (Matter of Smiley, supra, 36 NY2d, at 440).
III
Defendant’s counsel argues that there is no rational relationship to a legitimate public purpose in a distinction between Family Court indigent litigants and those in Supreme Court.
1. To follow defendant’s equal protection argument, this court will accept, for the sake of this discussion, defendant’s contention, that is: there are two classes. If that were so, the defendant does not raise the issue of “suspect classification” or “fundamental interest”. Suspect classifications are based upon alienage, national origin and race. Fundamental interests include voting, travel, procreation, the right of free speech, the right of a criminal defendant to appeal, and, perhaps, the right of privacy. Therefore, defendant has not made a case for a “strict scrutiny” test (Alevy v Downstate Med. Ctr., 39 NY2d 326 [1976]). Thus, defendant’s equal protection argument is subject to the less strict and more lax standard of rationality which tests whether the challenged classification bears a reasonable relationship to some legitimate legislative objective (Matter of Allen v Howe, 84 NY2d 665 [1994]; Alevy v Downstate Med. Ctr., supra). This test has been applied with great indulgence especially in the area of economics and social welfare (Alevy v Downstate Med. Ctr., supra).
*586 As said above, every enactment by a coequal branch of government (here the Legislature) is entitled to a strong presumption of constitutionality and one arguing against the constitutionality of such legislative enactment bears a heavy burden of establishing to the contrary beyond a reasonable doubt (Matter of Klein [Hartnett], 78 NY2d 662 [1991], cert denied 504 US 912 [1992]) that there is no conceivable state of facts that would support the classification (Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489 [1985]; Maresca v Cuomo, 64 NY2d 242 [1984], appeal dismissed 474 US 802 [1985]). Further, the courts need not be absolutely certain as to the motive and intent that prompted the Legislature to make a distinction between one class and another (Farrington v Pinckney, 1 NY2d 74 [1956]) or with the wisdom of the classification (Defiance Milk Prods. Co. v Du Mond, 309 NY 537 [1956]; Merit Oil v New York State Tax Commn., 111 Misc 2d 118 [Sup Ct, Albany County 1981]).
There is no claim here that the Legislature has invidiously discriminated in its classification or has been arbitrary. All nonrepresented indigent litigants in custody cases have a forum constitutionally vested with the jurisdiction to render child custody decisions, that is, the Family Court of the State of New York. What the Legislature did not do was grant free legal counsel to all indigent litigants, in all civil actions, in all forums. Neither by Constitution nor statute does such an indigent litigant have this right. Family Court Act § 262 is an expressly limited right to free counsel, limited to a specific court, i.e., the Family Court, by legislative enactment, and limited to child custody litigation.
2. The court is now left to conceive a state of facts that would support such separate classifications:
(a) How would appointed counsel be able to represent a client in a matrimonial action where child custody, although of great importance, is but one facet of the case? Could the appointed attorney act only in the custody portion of the case and only be paid for such representation? What of the rest of the case? Does counsel sit silent as a spectator? In divorce litigation, a myriad of issues raised during trial reflect on custody. An example is exclusive occupancy of the marital dwelling which usually depends upon which parent is granted physical custody of the children. Often issues of child support, spousal maintenance and equitable distribution are negotiated between the parties and are interrelated. While these and numerous other issues are not “child custody” per se, any attorney in the *587 exercise of his professional responsibilities who is engaged to represent a client in a child custody case would want, nay demand, in order to provide full and complete representation of the client, to be included in these portions of the case. However, by a strict reading of this statute, counsel would not be entitled to be remunerated for these services. If his retainer is solely for custody purposes, as Family Court Act § 262 (a) (v) specifically provides, would counsel have standing to intrude into other parts of the case? While it may be assumed, for instance, that child visitation would be part of counsel’s responsibility, the statute does not so provide. Would not adversary counsel have grounds to object to any intrusion into any part of the case not specifically “child custody”?
In short, it can be conceived that the Legislature foresaw that, in complex matrimonial actions with so many intertwining and dependent issues, an attorney could not properly represent his client with such a truncated retainer. It also is obvious that the Legislature was not willing to expand the retainer to the full breath and scope of a Supreme Court matrimonial action.
(b) Domestic Relations Law § 251 and Family Court Act § 467 (a) both give the Supreme Court the authority to refer matters of child custody to the Family Court.
In Professor Scheinkman’s Practice Commentary to Domestic Relations Law § 251 (McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C251:1, at 839), he refers to concerns, made more acute with the advent of equitable distribution, “that trials on the ancillary issues arising out of matrimonial actions [such as child custody] could consume an inordinate amount of time and attention in a Supreme Court trial.” The professor further refers to “the sense that ancillary issues, such as support and custody, are best heard by Family Court Judges who regularly determine such questions” (ibid.). He also states that in some areas “Family Court may have regular access to auxiliary services which may be important to the resolution of disputed issues, such as custody.” (Ibid.) Also to be noted, the professor points to a need to consider “expedited resolution, the estimated time needed for hearing the case, and local calendar conditions.” (Ibid.)
In view of the above, is it not conceivable that the Legislature intended to restrict free legal counsel to Family Court in ancillary issues such as child custody?
(c) There is also the matter of the public purse which is purely within the province of the Legislature. If the indigent *588 defendant is given free legal counsel by this court in the Supreme Court, which was not contemplated by the Legislature, what of this cost? Is the attorney to be paid by the County under County Law article 18-B or by the court system or by the State? The Legislature specifically provided that appointed counsel for indigent parties in Family Court are to be paid by the County and the County, in its budget, has prepared for this expense. There is no such direction for the Supreme Court. One might assume that payment would be treated in the same manner, but the Legislature has not so provided. The court has carefully reviewed the memoranda of law from the attorney for the Unified Court System and that of the Suffolk County Attorney. Clearly, both offices are concerned about an expense which, if visited upon their respective clients, would be unforseen, unprepared for and not budgeted.
Should the Supreme Court open the Pandora’s box of free counsel for indigent litigants in civil actions where the litigant claims an unenumerated constitutional right or some “fundamental interest?” The court thinks not. These matters involving the public treasure and treasury must be left to the Legislature. This financial thicket is no place for the courts. Clearly the Legislature is the branch of government constitutionally vested with the authority to decide and, until it speaks, the courts should not encroach upon the powers of a separate branch of government.
By being so specific in its grant of free legal counsel where no right exists, it is conceivable that the Legislature was concerned about entering the area of free legal counsel in civil matters where no State action or governmental interference exists; where the probability of criminal penalties does not exist; and where neither State nor Federal Constitution so requires.
If the “fundamental interests” recognized by law (above itemized) is expanded to include the appointment of free legal counsel in the Supreme Court to child custody, might not an able attorney convince a sympathetic Justice to include other “fundamental interests”? Matrimonial litigation (divorce, separation and annulment) is but one. “Eviction from homes, revocation of licenses affecting one’s livelihood, mortgage foreclosures, repossession of important assets purchased on credit, and any litigation which may result in the garnishment of income may be significant and ruinous for an otherwise indigent litigant. In short, the problem is not peculiar to matrimonial litigation. The horizon does not stop at matrimonial or *589 any other species of private litigation” (Matter of Smiley, supra, 36 NY2d, at 440-441).
Certainly, it is conceivable that the Legislature took the financial impact of the above into account.
The court finds that any one of the examples above postulated are states of fact that can be conceived as sustaining the classification and establishing a rational basis for any differentiation found or perceived to exist between defendant’s (apocryphal) two classes. Further, the heavy burden of establishing (Matter of Klein [Hartnett], 78 NY2d 662, supra) that there is no conceivable state of facts that would support the classification (Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489, supra) has not been met by defendant.
IV
Defendant’s counsel argues that Family Court Act § 262 is “irrationally underinclusive.”
Defendant’s argument that “the rationality of a distinction made by law is whether or not (the law) is reasonably related to the legislative object sought to be attained” has been treated previously in this decision. The distinction made by the Legislature is undoubtedly rational and fits the criteria established by the courts. To be certain that we are not drawn into a distracting digression, the defendant’s argument that there are two classes is central to her position and is based on a faulty premise. There are not two classes, only one; there are two forums; and all persons in the class have access to both forums (see, above). Thus, this argument is not based upon logic. Nor is it based upon the actuality of the situation. Since the Legislature saw fit to extend free legal counsel to indigent child custody litigants in one forum, it does not follow that it be deemed to have opened all forums simply because it opened the one.
Further, if we again assume for the sake of defendant’s argument that there are two classes, the statute (Family Ct Act § 262), having a rational basis (supra), does not offend the Constitution, either Federal or State, simply because it lacks mathematical nicety or because in practice it results in some inequality (Dandridge v Williams, 397 US 471 [1970], reh denied 398 US 914 [1970]; Lovelace v Gross, 80 NY2d 419 [1992]).
V
Defendant’s counsel appears to argue that this court is bound by precedent established in other Parts of this court, even *590 though there is no unanimity in the decisions. There has been no precedent established, only a plethora of varying opinions. Stare decisis rests on the principle that law by which men are governed should be fixed, definite and known and when the law is declared and construed, it should not be changed, save for mistake or error, or until revisited by competent authority. In the state of facts generally running through all nine cases, no consensus has yet been met and certainly the law has not been declared and construed.
Yet defendant, faced with this diverse group of opinions, selects one that fits her argument (Garner v Garner, supra) and urges that this court follow that decision on the doctrine of stare decisis, ignoring the other decisions. Again, defendant is not being logical any more than this court would be logical in following Moore (supra) or any of those other cases that are now on appeal which found contrary to Garner.
VI
In sum, this court finds that Family Court Act § 262 as an enactment by the New York State Legislature is entitled to a presumption of constitutionality. Nothing raised by defendant’s counsel gives this court reason to set aside this presumption.
In the event this court were to find otherwise and hold Family Court Act § 262 unconstitutional, such a decision would itself fly in the face of established precedent: “ ‘[I]t is a well-established rule that a court of original jurisdiction [which the Supreme Court is] should never declare a law unconstitutional unless such conclusion is inescapable’ [citations omitted], and the tendency is to leave such questions to appellate tribunals [citations omitted]. ‘Particularly, courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases where life and liberty is involved and invalidity of the act is apparent on its face’ [citations omitted].” (People v Pace, 111 Misc 2d 488, 489-490 [Sup Ct, Kings County 1981].)

 Many cases, and this may be one of them, are more efficiently and justly determined when all relevant issues are decided in a single forum. This consideration may prevail over defendant’s claim of right to free counsel.