OPINION OF THE COURT
Philip J. Patti, J.
Claimant served his third supplemental discovery demand (exhibit A to the moving papers) on May 4, 2004, to which the defendant responded on May 28, 2004 (exhibit B to the moving papers). There are several demands for which disputes remain, despite the best attempts by the parties to resolve the same.
Accordingly, claimant has made a motion (No. M-69369), inter alia, to compel production of the disputed, and purportedly discoverable, material, and the defendant has made a cross motion (No. CM-69448) for a protective order. As part of his motion, claimant also seeks a conditional order of preclusion, seeking to strike the answer and preclude defendant from offering any proof with respect to negligence, as well as seeking poor person status, and directing the defendant Department of Correctional Services (DOCS) to produce him at the trial of this matter. As the trial of this matter looms near, the parties have sought judicial intervention.
I find that the parties have made good-faith efforts to resolve the discovery disputes, and that the underlying motion practice is necessary to resolve the issues. Accordingly, I will address first the discovery issues, and then the poor person application.
The matters in dispute, as contained in the third supplemental discovery demand (exhibit A), include demands for:
1. the staffing plans for “D” Yard at Attica Correctional Facility on the date in question, to wit, June 14, 1996;
2. metal detector/electronic security devices log books/ servicing records pertaining to “D” Yard for the first six months of 1996;
3. institutional policies/procedures regarding inspections and searches of “D” Yard on certain occasions;
4. “D” Yard blueprints as of June 14, 1996;
5. documents relating to officers’ postings in “D” Yard at the time of the assault on June 14, 1996;
*962 6. 1995 and 1996 annual violence reports at Attica, including details relative to incidents in “D” Yard including “weapons of choice”; and
7. reports of defects in metal detectors or other electronic security devices for 1995 and 1996 at Attica.
I will address each demand seriatim, and briefly summarize as appropriate the positions of the parties. Demand “1” seeks the staffing plans for “D” Yard at Attica on the date in question, to wit, June 14, 1996. Defendant has responded, upon information and belief, that such records are retained for only five years, and eight years have elapsed. Claimant has elaborated, seeking such demurral on personal knowledge, rather than on information and belief, as well as seeking budget records showing funds allocated to posts for yard safety during the year in question.
In its cross motion, the State references a prior order in this claim, from now retired Judge Donald J. Corbett, Jr., wherein he denied a request to direct the release of staffing information for cell blocks A, B, C, and D (exhibit A to the cross motion, M-59067, filed May 19, 1999). Defendant urges that since no prior appeal was taken, that order remains law of the case. Claimant distinguishes the prior demand, noting that now he only seeks information relative to D Block Yard, not the cell blocks themselves. Since the demands seek information about different locations, I find that law of the case does not apply here.
Moreover, defendant supplies the affidavit of Superintendent James Conway at Attica, who, in addition to opining that release of such information could jeopardize the security and safety and the persons therein, avers that facility staffing charts generated in 1996 were routinely purged after retention at the facility for five years. While he acknowledges that a Facility Plot Plan containing general staffing requirements as they may have existed in March 1996 are likely maintained in Albany, they would not be specific as to the date in question. Regardless, I am persuaded that the requested documents no longer exist, and that part of claimant’s motion to compel is denied.
With respect to demands “2” and “7” regarding walk through metal detectors, Superintendent Conway avers that there were no such devices located in proximity to “D” Yard, and thus no records or reports of defects relative thereto, and that there were no maintenance, log records or reports of defects kept for hand-held metal detectors, which were used on a random basis, *963 and thus no reports thereof. Accordingly, that part of claimant’s motion to compel is denied.
As to demand “3” regarding any institutional policies or procedures relative to inspections and searches of “D” Yard, Superintendent Conway avers that there were no such policies specific to Attica, and makes reference to DOCS Directive 4910. While that reference to a directive in effect at the time of this incident purportedly addressed “Control of & Search for Contraband” with only general statements relative to “Searches of Facility Spaces,” it is not clear to me that the general objections raised by the defendant, and specifically Superintendent Conway, pertaining to security concerns involve the release of this directive. Accordingly, since it appears to only address generalized topics, I will direct the defendant to release Directive 4910 to claimant’s counsel within 10 days of service of a file-stamped copy of this decision and order, provided however that if defendant raises security concerns relative to this directive, then I will review the same in camera. If so, defendant then shall provide an original and one copy of said directive, along with its written objections to the release thereof, to the court within the same 10-day period.
In demand “4,” claimant seeks the blueprints of the location of the incident, while defendant has suggested that claimant instead visit the facility to view the area in question. While conditionally accepting that offer, claimant demurs, not knowing whether it is “structured the same as it was on the date of the incident” over eight years ago. Thus, argues claimant, the offer does not adequately comply with the demand. Once again, Superintendent Conway has averred under oath, on personal knowledge, that the configuration of “D” Yard is presently substantially similar to how it appeared in 1996. Coupled with the security concerns raised by Superintendent Conway, I deny claimant’s motion to compel with respect to the “D” Yard blueprints.
Demand “5,” seeking the officers’ postings in “D” Yard at the time of the assault, falls under the same penumbra of security concerns discussed above. The motion to compel as to this demand is similarly denied.
Finally, demand “6” seeks 1995 and 1996 annual violence reports at Attica. James A. Lyons, a Program Research Specialist III in the central offices of DOCS, avers that the annual Unusual Incident Reports, which he says is the only source or compilation that would encompass assaults on inmates or staff *964 in those years, does not detail specific incidents by location within given facilities (i.e., not “D” Yard, but Attica as a whole). Similarly, he avers that the annual report refers to the number of weapons found statewide, but does not break them down by facility. In sum he avers, and, without any factual contradiction before me, there are no DOCS’ generated annual reports from Attica. Of course, I am not so naive as not to realize that Attica officials had to supply DOCS central with the reports of assaults on inmates or staff, as well as those unusual incident reports which involve the use of weapons, to wit, how else would DOCS central be able to compile its annual totals. However, since this demand seeks details relative to incidents occurring in “D” Yard, and since the annual compilations, as described by Lyons, do not incorporate the details sought, this part of claimant’s motion is similarly denied.
While I have denied most of the relief sought by claimant, I am not ignorant of the conundrum in which he is placed. The issues at bar certainly raise questions which require a balance between the ability of this or any similarly situated claimant to obtain sufficient discovery to obtain expert opinions supporting his claim, contrasted with the duty of the defendant to provide for the safety and security of inmates, staff and visitors in its correctional facilities. Claimant demurs from these concerns, suggesting that such staffing reports be made available only to its expert on penology and security, presumably so that such expert would be able to express an opinion supporting what appears to be a theory by claimant that there was inadequate or insufficient staffing, and thus negligence by the defendant. The claimant suggests that an order be fashioned whereby the material sought would be disclosed only to counsel, without redisclosure of the sought after information to anyone but his expert.
But therein lies the problem. Assuming arguendo, that the expert were to opine an inadequacy, insufficiency or other negligence by the defendant in its staffing at Attica in the yard on the day in question, then the foundation of such opinion would of necessity require an on-the-record recitation of some of the very materials that claimant would have me order no re-disclosure. And without a proper foundation laid to support a presumably claimant-friendly opinion, such opinion would likely *965 be of questionable benefit to me, let alone be admissible. A classic “Catch-22.”[1]
At the end of the day however, I defer to what I believe are credible assertions of the risk to inmates, staff and civilians, were I to release the sought after information.
“The number of corrections officers who should be present in various areas of a correctional institution . . . essentially involves the experience and discretion of the Department of Corrections. Indeed, deference to the judgment of correctional facility authorities must be the rule, and a court cannot properly substitute its judgment for that of such authorities” (Papadopoulous v State of New York, Ct Cl, Dec. 18, 2001, Minarik, J., Claim No. 103653, Motion No. M-64137, UID No. 2001-031-004,[2] quoting Tucker v State of New York, Ct Cl, Aug. 28, 1996, Bell, J., Claim No. 85578).
To that extent, and on the bases specified above, I deny those parts of claimant’s motion to compel and grant those parts of defendant’s cross motion for a protective order.
With respect to the relief sought pursuant to CPLR article 11, I note that the County of Monroe was served with the motion papers, and in fact has replied, noting in effect that the application does not seek to have the County of Monroe pay for any costs relating to the transport of claimant to the court, relief that it argues in any event is not required by CPLR 1101 (sic, probably means CPLR 1102). The County of Monroe does observe that claimant’s affidavit in support of his motion for poor person status “indicates that the applicant currently satisfies the financial requirements of CPLR § 1101 to proceed as a poor person.”
The defendant’s opposition suggests that the relief of poor person status is neither statutorily nor constitutionally required. However, I believe that it is the relief of the appointment of counsel, not poor person status, which is neither statutorily nor constitutionally required. Notably, Wills v City of Troy (258 AD2d 849 [1999]), relied upon by defendant, addresses only the right to the appointment of counsel, and there the Third Department affirmed a trial court which had granted poor person status, but declined to assign counsel. Matter of *966 Smiley (36 NY2d 433 [1975]) and Ferguson v State of New York (Ct Cl, Dec. 3, 2004, Hudson, J., Claim No. 109479, Motion No. M-68699) really address the factors to be considered in determining whether the appointment of counsel is appropriate, to wit, when the applicant is faced with a “loss of liberty or grievous forfeiture” (Matter of Smiley, supra at 437). In Wilson v State of New York (101 Misc 2d 924 [1979]), also cited in support by defendant, that claimant’s motion to prosecute the action as a poor person was granted, albeit with the motion being denied in all other respects.
There is no dispute before me, as acknowledged by the County of Monroe relying upon the undisputed factual assertions of the claimant, that he satisfies the financial requirements of CPLR 1101 to proceed as a poor person.[3] The defendant does not dispute claimant’s entitlement to the status of a poor person on the basis that he satisfies the financial requirements.
There is nothing before me which would warrant a denial of poor person status. Accordingly, that portion of claimant’s motion is granted. Having done so, claimant now requests that I apply the literal intent and clearly articulated purpose of Civil Rights Law § 79 (3) (b) and § 79-a (3) (b), which are essentially identical, and read:
“(b) Where the inmate is permitted in accordance with any other law to proceed with the action or proceeding as a poor person the expense of transporting the inmate to, or lodging or guarding him at any place other than in a state correctional institution or any other expense relating thereto shall be a state charge; provided, however, that where an inmate has been granted such permission and a recovery by judgment or by settlement is had in his favor, the court may direct him to pay out of the recovery all or part of any sum expended by the state.”
The Fourth Department has recently reiterated the trial court’s duty to apply the “unambiguous language of the statute” (Roberts v State of New York, 11 AD3d 1000, 1001 [2004]) in considering legislative intent, albeit in another context. If a claimant qualifies as a poor person, the Civil Rights Law does not “provide for the recovery of any expenses advanced by *967 DOCS other than the costs associated with transporting claimant himself” (Price v State of New York, Ct Cl, May 12, 2004, Hard, J., Claim No. 108186, Motion Nos. M-67925, M-67926, M-67927, M-67928, UID No. 2004-032-030). Here, the claimant’s application seeks relief precisely as contemplated by the Civil Rights Law, and as such, I feel compelled to grant that part of his motion.
Accordingly, I grant that part of claimant’s motion granting him poor person status, and will sign a properly denominated “body order and subpoena” directing the defendant to produce claimant at the trial hereof on March 14, 2005. Therefore, consistent with the statute, the reasonable expenses of transporting claimant to the Court of Claims in Rochester, or lodging or guarding him, shall be a state charge, unless there is a recovery or settlement of this claim in his favor, at which time I “may direct him to pay out of the recovery all or part of any sum expended by the state.”
In sum, the motion and cross motion are granted in part and denied in part.

. Thank you, Joseph Heller.

. Decisions and selected orders of the New York State Court of Claims are available on the Internet at <www.nyscourtofclaims.state.ny.us>.

. This claim was filed on January 15, 1998, preceding the filing fee requirements of Court of Claims Act § 11-a (L 1999, ch 412, eff Dec. 7, 1999), and thus there was no prior application for poor person status.